**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR F 05-063 LJO |
| Plaintiff, | **ORDER ON DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE** (Doc. 90) |
| vs. | |
| LUIS C. RODRIGUEZ, | |
| Defendant. | |

| | |
|---|---|
| LUIS C. RODRIGUEZ, | **CASE NO. CV F 08-802 LJO** |
| | **ORDER ON PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS** |
| Petitioner, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**INTRODUCTION**

Defendant and Petitioner Luis C. Rodriguez ("Mr. Rodriguez") is a federal prisoner who petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("section 2255"). Having considered Mr. Rodriguez's section 2255 motion on the record, this Court DENIES the motion.

1

1          **BACKGROUND**

2          **Charges, Trial and Sentence**

3          A March 3, 2005 indictment, and May 18, 2006 superceding indictment, charged Mr. Rodriguez

4    with two counts-(1) receipt or distribution of material involving the sexual exploitation of minors (18

5    U.S.C. §2252(a)(2)); and (2) possession of material involving the sexual exploitation of minors (18

6    U.S.C. §2252(a)(4)(B)).  Mr. Rodriguez pled not guilty to these charges.

7          The action proceeded to trial on May 30, 2006.  On April 1, 2006, the jury returned a unanimous

8    verdict to find Mr. Rodriguez guilty on both counts.  Mr. Rodriguez was sentenced to 135 months.  He

9    is currently held in the Medical Center for Federal Prisoners in Springfield, Missouri.

10          **Motion for New Trial**

11          On July 6, 2007, Mr. Rodriguez, with new counsel, moved for a new trial.  Central to the motion

12    for new trial was a declaration of an expert witness, David R. Penrod ("Mr. Penrod").  According to Mr.

13    Penrod, there is no evidence that Mr. Rodriguez "downloaded," "possessed," or "saw" the thumbnail

14    images containing child pornography on Mr. Rodriguez's computer:

15          Microsoft Windows Internet Explorer automatically downloads all thumbnail graphic
          image files found on every website visited by the user into the user's Internet History
16          cache.  This download occurs without the knowledge of the user.  All graphic images on
          every visited website are downloaded, including images not seen by the user, which can
17          amount to thousands of images.

18          There are twelve-thousand and thirty-eight (12,028) [sic] thumbnail images containing
          pornography in the Internet History cache within Mr. Rodriguez's User Profile.  These
19          files were automatically downloaded by Internet explorer without the knowledge of Mr.
          Rodriguez.  In other words, they were not downloaded by Mr. Rodriguez.  In this case,
20          the government claims that fifty-one (51) of these thumbnail images contain child
          pornography and that somehow Mr. Rodriguez "possessed" them.  This is simply not
21          true.  There is no evidence that can be found to prove that Mr. Rodriguez ever viewed
          any of these images...There is simply no means available to prove a user "saw" a
22          particular thumbnail image.

23    Declaration of David J. Penrod ("Penrod Decl.") at ¶¶ 12, 17.  Mr. Penrod further avers that "at least two

24    (2) other users, both of who have separate User Profiles on Mr. Rodriguez's work computer and

25    containers in the recycle Bin, downloaded and accessed adult and child pornography." Penrod Decl. at

26    ¶13.  Mr. Penrod opines that the percentage of child pornography to adult pornography is "minuscule"

27    and "statistically insignificant" and that the evidence "demonstrates at best a marginal interest in children

28    as sexual objects." Penrod Decl. at ¶¶19, 20.

2

1  After oral argument, this Court denied Mr. Rodriguez's motion for a new trial on July 27, 2007.

2  **Direct Appeal and section 2255 motion**

3       Mr. Rodriguez filed a notice of appeal on August 1, 2007.  Mr. Rodriguez appealed this Court's

4  denial of his motion to suppress evidence and motion for a new trial.  On February 26, 2008, Mr.

5  Rodriguez filed this section 2255 motion directly with the United States Court of Appeals for the Ninth

6  Circuit ("Ninth Circuit") to argue ineffective assistance of counsel.  By order on May 20, 2008, the Ninth

7  Circuit transferred the section 2255 motion to this Court, pursuant to Fed . R. App. P. 22(a).  Thereafter,

8  this Court held in abeyance Mr. Rodriguez's section 2255 petition until resolution of his direct appeal.

9       On April 17, 2009, the Ninth Circuit issued a memorandum decision to affirm the district court's

10  denial of Mr. Rodriguez's motion to suppress and motion for new trial. *United States of America v.*

11  *Rodriguez*, No. 07-10374 (9th Cir. 2009) (Crim. Doc. 101) ("Appellate Decision").  In its decision, the

12  Ninth Circuit also addressed Mr. Rodriguez's ineffective assistance of counsel claim. Appellate

13  Decision, 5-6.  The mandate of the Ninth Circuit issued on May 12, 2009.

14       With Mr. Rodriguez's direct appeal resolved, this Court re-set the briefing schedule for his

15  section 2255 motion.  The government opposed Mr. Rodriguez's motion on June 8, 2009.  Mr.

16  Rodriguez filed his reply on June 22, 2009.  This Court found this motion suitable for decision without

17  a hearing, pursuant to Local Rule 78-230(h).

18  **DISCUSSION**

19       Mr. Rodriguez seeks relief pursuant section 2255 based on his claim of ineffective assistance of

20  counsel.  The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy

21  the right...to have the Assistance of Counsel for his defense." U.S. Constitution, Amend. VI.  This

22  provision provides a criminal defendant with the "right to effective assistance of counsel." *McMann v.*

23  *Richardson*, 397 U.S. 759, 771 (1970).

24       When considering an ineffective assistance of counsel claim, a court must consider two factors.

25  *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 842 (1983); *Strickland v. Washington,* 466 U.S.

26  668, 687, 104 S.Ct. 2052, 2064 (1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994), *cert. denied*,

27  513 U.S. 1001, 115 S.Ct. 513 (1995).  The first factor to consider is whether the counsel's performance

28  fell below an objective standard of reasonableness considering all of the circumstances. *Strickland,* 466

1  U.S. at 687-688, 104 S.Ct. at 2064; *Bloom v. Calderon*, 132 F.3d 1267, 1270 (9th Cir. 1997), *cert.*

2  *denied*, 494 U.S. 1039, 118 S.Ct. 1856 (1998).   A defendant must demonstrate that counsel's

3  performance was deficient and that counsel made errors so serious not to function as "counsel"

4  guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.   A defendant must

5  identify counsel's alleged acts or omissions that were not the result of reasonable, professional judgment

6  considering the circumstances.   *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066; *United States v.*

7  *Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848, 117 S.Ct. 135 (1996).

8  There is a strong presumption that counsel's performance fell within the wide range of professional

9  assistance.   *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 2586 (1986) (quoting

10  *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065); *Bloom*, 132 F.3d at 1270; *Hughes v. Borg*, 898 F.2d 695,

11  702 (9th Cir. 1990).   Judicial scrutiny of counsel's performance is highly deferential.   *Strickland*, 466

12  U.S. at 677-678; 104 S.Ct. at 2063; *Quintero-Barraza*, 78 F.3d at 1348; *Sanders v. Ratelle*, 21 F.3d

13  1446, 1456 (9th Cir. 1994).

14  The second factor for court consideration is whether the petitioner has affirmatively proven

15  prejudice. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *Bloom*, 132 F.3d at 1271.   Prejudice occurs

16  when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

17  proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2066.   A reasonable

18  probability is "a probability sufficient to undermine the confidence in the outcome." *Strickland*, 466

19  U.S. at 694, 104 S.Ct. at 2066.   In addition, the court can find prejudice only when the outcome would

20  have been different without counsel's errors. *See Lockhart*, 506 U.S. at 369-370, 113 S.Ct. at 842-843.

21  A court must also evaluate whether the entire proceeding was fundamentally unfair or unreliable because

22  of counsel's ineffectiveness. *Id*.; *Quintero-Barraza*, 78 F.3d at 1345; *United States v. Palomba*, 31 F.3d

23  1456, 1461 (9th Cir. 1994).   A defendant may be granted a windfall, to which he is not entitled, if his/her

24  conviction or sentence is set aside solely because the outcome may have been different but for counsel's

25  errors. *Lockhart*, 506 U.S. at 369-370, 113 S.Ct. at 842.   Thus, if a court finds that counsel's

26  performance fell below an objective standard of reasonableness, and that but for counsel's

27  unprofessional errors, the result of the proceeding would have been different, the court must determine

28  despite the errors and prejudice, whether the proceeding was fundamentally fair and reliable.

1    To support his claim, Mr. Rodriguez relies on Mr. Penrod's declaration, as described more fully

2    above.  In addition, Mr. Rodriguez submits the declaration of Vincent J. Jura, II ("Mr. Jura").  Mr. Jura

3    is a private investigator who interviewed Mr. Rodriguez's trial counsel by telephone on November 28,

4    2007.  According to Mr. Jura:

5        I asked [trial counsel] the following question: "Is there any reason to explain why you
         chose not to utilize a defense retained computer forensic expert on the Luis C. Rodriguez
6        case?"
         [Counsel] replied, "Based upon a client interview I conducted with him (Rodriguez) and
7        the facts at issue, I felt it would not be necessary to have one."

8        I asked [trial counsel], "Was there any strategic, budgetary or tactical reason [counsel]
         took into consideration when making this decision to not utilize a defense computer
9        forensic expert?"
         [Counsel] replied, "I believe if I requested one, the request would have been granted."
10
         I asked him, "Has there ever been case, which he is aware of that is of similar type as the
11       Rodriguez case, whereas a defense case strategy was to not employ a computer forensic
         expert." [Counsel] did not answer the question.  He stated he could possibly answer these
12       questions when meeting with me [at a later date]."

13    Jura Decl. at pp. 1-2.

14       As to the first *Strickland* factor, Mr. Rodriguez argues that his trial counsel's failure to call expert

15    witnesses in the instant case, "where the prosecution's case hinged almost exclusively on expert

16    testimony, pervaded the trial through identifiable mistakes" and constituted "per se ineffective assistance

17    of counsel."  In opposition, the government argues that the trial counsel's decision not to retain experts

18    and present expert testimony at trial was "a decision well within trial counsel's discretion."

19       Mr. Rodriguez argues that the second *Strickland* factor is satisfied, because had his trial counsel

20    retained a computer expert witness, the outcome would have been different.  The government argues that

21    Mr. Rodriguez cannot succeed on his ineffective assistance of counsel claim, because there was

22    abundant evidence upon which the jury could have based its verdict, even if expert testimony had been

23    presented.

24       This Court first considers the second *Strickland* factor.  A court need not determine whether

25    counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result

26    of the alleged deficiencies.  *Strickland*, 466 U.S. at 697.  Since it is necessary to prove prejudice, any

27    deficiency that does not result in prejudice must necessarily fail.

28       In its decision on Mr. Rodriguez's appeal, the Ninth Circuit considered Mr. Rodriguez's

1 | ineffective assistance of counsel claim.  On this issue, the Ninth Circuit ruled:

2 | > Rodriguez cannot show that "there is a reasonable probability that, but for counsel's
3 | > unprofessional errors, the result of the proceeding would have been different," *Strickland*
4 | > *v. Washington*, 466 U.S. 668, 694 (1984), because there was evidence of (1) child
5 | > pornography on his work computer under files bearing his initials; (2) Rodriguez's access
6 | > to computers at this residence and access to the internet; and (3) Rodriguez's returning
7 | > to his residence and destroying images of child pornography after he suspected that he
8 | > was the target of a criminal investigation.

6 | Appellate Decision at 6.

7 | Having considered the parties' arguments, evidence, and the applicable law, this Court agrees with the

8 | Ninth Circuit, and the government, that Mr. Rodriguez cannot show that there is a reasonable probability

9 | that but for counsel's unprofessional errors the result of the proceeding would have been different.

10 | The government presented abundant evidence upon which the jury could have based its verdicts,

11 | including: Mr. Rodriguez worked in a laboratory and worked on a computer that had multiple users.

12 | Other users, but never Mr. Rodriguez, complained about continual pop-up images of pornography on

13 | the work computer.  When the information technology specialist at the work site attempted to solve the

14 | problem, he discovered images of naked children and contacted law enforcement.  When a law

15 | enforcement officer questioned Mr. Rodriguez, he appeared nervous and evasive, and he claimed not

16 | to remember his password.  Mr. Rodriguez also stated that he never shared his password with anyone.

17 | Mr. Rodriguez denied that he had a working computer at his residence.  Even though Mr. Rodriguez's

18 | supervisor told the law enforcement officer that Mr. Rodriguez rarely went home for lunch, Mr.

19 | Rodriguez ended the interview and went home before his normal lunch hour.  Once home, Mr.

20 | Rodriguez removed the hard drive from his computer and broke several compact discs, some labeled

21 | "teen" or apparently "preteen."  He placed handwritten URLs of pornography website into vehicles on

22 | the property.  He placed a large amount of stories detailing incest and sexual activities between adults

23 | and children into a barrel and started to burn them.  The government contended that Mr. Rodriguez also

24 | placed sexually explicit images of children into the same burning barrel and attempted to destroy that

25 | evidence, as well.  All other employees who had access to the computer on which the child pornography

26 | was stored testified under oath at trial and denied looking at or downloading any pornography.  Most of

27 | those witnesses complained about images of pornography that kept appearing on the computer.  The

28 | pornographic images were located in a folder with Mr. Rodriguez's initials–LCR–and were organized

1  in specific folders.  One folder was labeled "Young Teens."  Moreover, the internet activity of the person

2  logged in under the username "LCR" with the unique password assigned to Mr. Rodriguez demonstrated

3  that person would access a website related to one of the insects on which Mr. Rodriguez helped to

4  research and then minutes later that person would place an image into the "Young Teens" folder.[1]

5          Mr. Rodriguez cannot demonstrate that a different result would be reached, even if a computer

6  forensics expert, such as Mr. Penrod, had testified at trial.  Mr. Penrod opines that there are:

7          three (3) possible interpretations of this evidence [that others had access to the work
        computer]:
8              1)      That two other persons downloaded pornography onto the work computer
                      in addition to Mr. Rodriguez;
9              2)      That Mr. Rodriguez downloaded all of the pornography and was able to
                      access other User Profiles to do so;
10             3)      Those other users, not Mr. Rodriguez, downloaded all or some of the
                      pornography and were able to access Mr. Rodriguez's User Profile to do
11                    so.

12 Penrod Decl. at ¶16.  As the government points out, Mr. Penrod suggests by his own analysis that in two

13 of three scenarios, *Mr. Rodriguez is the person responsible* for putting the child pornography into folders

14 on the work computer.  Moreover, the government points out several inconsistencies in Mr. Penrod's

15 declaration and provides evidence by declaration that contradict Mr. Penrod's assertions.  In addition,

16 Mr. Penrod's opinion does not address the evidence supporting Mr. Rodriguez's possession of child

17 pornography at his home.  Furthermore, the only scenario in which Mr. Penrod suggests Mr. Rodriguez

18 to be not guilty of the charges is contradicted by Mr. Rodriguez's own statement that he never shared

19 his computer password.  For these reasons, Mr. Rodriguez's expert witness testimony presents no

20 unequivocal evidence that would have caused a different result.  The evidence presented at trial

21 supported the jury verdict, even if computer forensics expert Mr. Penrod had testified at trial.

22         Based on the above findings, there is no "probability sufficient to undermine the confidence in

23 the outcome."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2066.  In addition, the court finds that the

24 outcome would have been the same notwithstanding counsel's errors.  Accordingly, this Court finds no

25 prejudice to support Mr. Rodriguez's ineffective assistance of counsel claim, and such claim must fail.

26  *See Lockhart*, 506 U.S. at 369-370, 113 S.Ct. at 842-843.

27

28         [1]In his reply memorandum, Mr. Rodriguez does not refute the government's summary of the evidence presented
        against him at trial.

7

1       The Court further rejects Mr. Rodriguez's argument that retention of an expert witness would

2 have changed the outcome of the motion to suppress. The Ninth Circuit ruled that there was probable

3 cause and exigent circumstances to perform a warrantless search to affirm the Court's denial of Mr.

4 Rodriguez's motion to suppress. Appellate Decision, 2-4. Because the evidence demonstrated materials

5 other than photographs were burned in the barrel, and because it was within the province of the jury to

6 make a finding of fact regarding what materials Mr. Rodriguez burned, Mr. Rodriguez fails to

7 demonstrate that his trial counsel's failure to retain an expert to testify regarding the age of the models

8 in the burn barrel could have changed the outcome of the motion to suppress or the jury's verdict.

9

10 **CONCLUSION AND ORDER**

11       For the foregoing reasons, this Court DENIES Mr. Rodriguez's section 2255 relief. The clerk

12 is directed to close Case No. CV F 08-802.

13

14 IT IS SO ORDERED.

15 **Dated:    June 23, 2009**                               **/s/ Lawrence J. O'Neill**
                                                        UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28